**Robert WARNER, Plaintiff,**

v.

**ORANGE COUNTY DEPARTMENT OF PROBATION, Defendant.**

No. 93 Civ. 1544 (GLG).

United States District Court, S.D. New York.

Dec. 14, 1994.

---

**70**

Robert N. Isseks, Goshen, NY, for plaintiff.

Richard B. Golden, County Atty., County of Orange, Goshen, NY, for defendant (M. Kevin Coffey, of counsel).

## OPINION

GOETTEL, District Judge:

This action was brought by plaintiff Robert Warner to obtain declaratory and compensatory relief on his claim that the Orange County, New York Department of Probation coerced him into attending Alcoholics Anonymous meetings in violation of the United States Constitution's First Amendment Establishment of Religion Clause.[1] Previously, we denied defendant's motion to dismiss. *See Warner v. Orange County Dep't of Probation*, 827 F.Supp. 261 (S.D.N.Y.1993). A one day bench trial was held on May 25, 1994 in White Plains, New York. The following are the Court's findings of fact and conclusions of law.

### I. Findings of Fact

On November 13, 1990, plaintiff pleaded guilty to aggravated unlicensed operation of a motor vehicle in the second degree, a viola-

tion of N.Y.Vehicle and Traffic Law § 511(2), and Driving While Ability Impaired, a violation of N.Y.Vehicle Traffic Law § 1192(1). This was plaintiff's third alcohol-related driving offense within a period of slightly more than one year. Plaintiff was sentenced by Judge David L. Levinson of the Justice Court of the Town of Woodbury, Orange County, New York, to three years probation. There were six "Additional Conditions of Probation Pertaining To Alcohol." The fifth condition is the important one for this case: "That you will attend Alcoholics Anonymous at the direction of your Probation Officer."

Alcoholics Anonymous ("A.A.") is a worldwide organization that has been helping men and women recover from alcoholism since the 1930s. Our inquiry into A.A. is not concerned with the effectiveness of the program (which we have no reason to doubt), but rather with whether the A.A. program as plaintiff experienced it was essentially religious in nature.

The plaintiff attended A.A. meetings in Monroe, New York under the direction of his probation officer, Neal Terwilliger, from November 1990 through September 1992. On January 23, 1991 plaintiff, who is an atheist, complained to Terwilliger about what he perceived as the religious nature of the A.A. meetings he had attended. Terwilliger was not inclined to excuse plaintiff on this ground—he told plaintiff to continue attending the meetings, and to focus on how A.A. could help him with his abuse of alcohol.

The centerpiece of the A.A. program, as plaintiff experienced it, was the Twelve Steps of Alcoholics Anonymous. The Twelve Steps are the essential statement of the A.A. program. The plaintiff was specifically directed by Terwilliger to attend step meetings, each of which would focus on how to "work" a particular step. The Twelve Steps are as follows:

> 1. We admitted we were powerless over alcohol—that our lives had become unmanageable.

---

1. Plaintiff does not claim that defendant's actions were a violation of the First Amendment's Free

Exercise Clause.

2. Came to believe that a Power greater than ourselves could restore us to sanity.

3. Made a decision to turn our will and our lives over to the care of God *as we understood Him.*

4. Made a searching and fearless moral inventory of ourselves.

5. Admitted to God, to ourselves and to another human being the exact nature of our wrongs.

6. Were entirely ready to have God remove all these defects of character.

7. Humbly ask Him to remove our shortcomings.

8. Made a list of all persons we had harmed, and became willing to make amends to them all.

9. Made direct amends to such people wherever possible, except when to do so would injure them or others.

10. Continued to take personal inventory and when we were wrong promptly admitted it.

11. Sought through prayer and meditation to improve our conscious contact with God, *as we understood Him,* praying only for knowledge of His will for us and the power to carry that out.

12. Having had a spiritual awakening as the result of these steps, we tried to carry this message to alcoholics, and to practice these principles in all our affairs.

(emphasis in original).

The concept of a higher power is at the center of the Twelve Steps. According to the Twelve Steps, the higher power is the source of the knowledge and strength that alcoholics need to recover. In fact, the first three steps explicitly deny that recovery from alcoholism is possible without reliance on a higher power. The Twelve Steps stand for the proposition that recovery from alcoholism requires a spiritual awakening.

This emphasis on a higher power is also the central theme of the third edition of A.A.'s basic text, entitled "Alcoholics Anonymous," but commonly referred to as the "Big Book." At the A.A. meetings plaintiff attended, the Big Book was presented as an all-purpose guide for anyone having prob-

lems working the Twelve Steps. The first section, up to page 164, describes the A.A. program. The rest of the book is composed of alcoholics' personal stories.

The first chapter of the Big Book introduces the A.A. program through the life story of Bill W., a co-founder of A.A. Written in an autobiographical style, it describes the descent of Bill W. into alcoholic despair, and his recovery. The key to beginning his recovery, Bill W. writes, was "being willing to believe in a Power greater than myself." *Id.* at 12. Bill says: "Belief in the power of God, plus enough willingness, honesty and humility to establish and maintain the new order of things, were the essential requirements. Simple, but not easy; a price had to be paid. It meant destruction of self-centeredness. I must turn in all things to the Father of Light who presides over us all." *Id.* at 13–14. Summing up, Bill writes: "Faith has to work twenty-four hours a day in and through us, or we perish." *Id.* at 16. The rest of the Big Book continues this theme.

Group prayer was common at the A.A. meetings plaintiff attended. Many of the meetings began with a non-denominational "Serenity Prayer" ("Lord, grant me the serenity to accept the things that I cannot change, the courage to change the things I can, and the wisdom to know the difference") and all of the meetings ended with the Lord's Prayer, which is a specifically Christian prayer. In addition, those attending the meetings were strongly encouraged to pray.

In short, the A.A. program that plaintiff experienced placed a heavy emphasis on spirituality and prayer, in both conception and in practice.

## II. Conclusions of Law

Warner sues for damages and declaratory relief pursuant to 42 U.S.C. § 1983, on the ground that the Probation Department's actions violated the First Amendment's Establishment Clause. The First Amendment is made applicable to the states by the Fourteenth Amendment. *Edwards v. South Carolina,* 372 U.S. 229, 235, 83 S.Ct. 680, 683, 9 L.Ed.2d 697 (1963). Defendant does not deny that the County Department of Proba-

tion's actions in this case constitute state action for purposes of the Fourteenth Amendment.

■■■ Before deciding the substance of plaintiff's claim, we must consider defendant's argument that plaintiff has failed to state a claim against it because the court which sentenced him, not the Probation Department, determined the conditions of his probation. This argument is unconvincing. Certainly, former probationers can sue the state over the constitutionality of conditions of probation which are set forth in a state statute. *See, e.g., Fuller v. Oregon,* 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974). We do not see why former probationers should not also be able to sue the government over conditions of probation which are the result of an informal policy of a local agent of the state.

Moreover, judges generally agree to whatever conditions are recommended by the Probation Department, as long as they are reasonable. In this case, the idea of requiring plaintiff to attend A.A. as a condition of probation originated with the Probation Department, not with the judge. Additionally, it was plaintiff's probation officer, not the judge, who rebuffed plaintiff when he complained about the religious nature of A.A. meetings. Even though technically it is the judge, not the Probation Department, that imposes conditions of probation, in reality the Probation Department was responsible for Warner's having to attend A.A.. The Constitution deals with realities, not technicalities.

■■ The Establishment Clause provides: "Congress shall make no law respecting an establishment of religion...." In *Lee v. Weisman,* —— U.S. ——, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992), the Supreme Court stated that the Establishment Clause means at a minimum that  .

> government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which 'establishes a [state] religion or religious faith, or tends to do so.' *Lynch* [*v. Donnelly,* 465 U.S. 668, 678, 104 S.Ct. 1355, 1361, 79 L.Ed.2d 604]; *see also Allegheny County* [*v. Greater Pittsburgh ACLU,* 492

U.S. 573, 591, 109 S.Ct. 3086, 3100, 106 L.Ed.2d 472] quoting *Everson v. Board of Education of Ewing,* 330 U.S. 1, 15–16, 67 S.Ct. 504, 511–12, 91 L.Ed. 711 (1947). *Id.* at ——, 112 S.Ct. at 2655 (citations expanded; substantive alteration in original). The defendant's actions in this case violated this constitutional principle.

Unquestionably, the defendant coerced the plaintiff to attend A.A. meetings. Plaintiff's Order and Conditions of Probation stated that failure to comply with the conditions of probation could result in confinement. A somewhat harder question in this case is whether A.A. should be considered "religion or its exercise." To one with only a passing knowledge of the A.A. program, the gut answer would probably be no. However, the testimony and evidence in this case support the finding that the A.A. meetings plaintiff attended were the functional equivalent of religious exercise.

The importance of giving up one's will to a higher power was a central theme of the A.A. literature plaintiff was told to read. At meetings the plaintiff attended, the discussion centered on the idea that alcoholics are unable to overcome their addiction until they let God into their lives. A popular topic was how to start praying (one recommendation was to throw the car keys under the bed at night so you would have to get on your knees in the morning). Many of the meetings plaintiff attended opened with a prayer, and most of them ended with a group recitation of the Lord's Prayer. We find that the A.A. meetings plaintiff attended were the functional equivalent of religious exercise, and thus should be treated as religious exercise for purposes of the Establishment Clause.

Another issue we must consider is whether the Probation Department, in coercing probationers into participating in religious exercise, was acting in a way that " 'establishes a [state] religion or religious faith, or tends to do so.' " *Id.* This inquiry is not compelled by the language in *Lee,* which assumes that any time the government coerces anyone to support or participate in religion or its exercise, it is acting in a way that establishes a state religion, or tends to do so. However, we doubt that the *Lee* court had the proba-

tion context specifically in mind, so we undertake a separate inquiry into whether the defendant was in fact acting in a way that establishes a state religion or religious faith, or tends to do so.

We find that sending probationers to rehabilitation programs which engage in the functional equivalent of religious exercise is an action which tends to establish a state religious faith. Of course, the defendant in this case did not have the intention of establishing a state religious faith when it coerced the probationer into attending A.A. meetings. Nonetheless, the practical effect of coercing probationers into the exercise of religion is to tend towards a state-mandated and state-approved religion. Certainly, the defendant's actions tend more toward a state establishment of religion than other state practices that the Supreme Court has found to be violations of the Establishment Clause. *See Lee,* —— U.S. ——, 112 S.Ct. 2649 (including clergy who offer prayers as part of public secondary school graduation ceremony forbidden by Establishment Clause); *Allegheny County v. Greater Pittsburgh A.C.L.U.,* 492 U.S. 573, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989) (display of creche in county courthouse violates Establishment Clause).[2]

The defendant's actions are not justified by the fact that it was attempting to rehabilitate a person convicted of a serious offense, rather than dealing with an ordinary citizen. It would be ironic and self-defeating if in the attempt to restore offenders to full membership in our society, the state were to ignore the Constitution, our society's foremost legal statement of our values.

In short, the defendant violated the Establishment Clause by coercing the plaintiff to participate in religious exercise, an act which tends towards the establishment of a state religious faith. We are aware that this holding may be disruptive of the Department of Probation's legitimate and important efforts to rehabilitate those who have committed alcohol-related offenses. Without expressing an opinion on any legal issues outside the facts of this case, we note that in *O'Connor v. California,* 855 F.Supp. 303 (C.D.Cal.1994) the court upheld the constitutionality of Orange County, California's policy of requiring persons convicted of drunk driving to attend a self-help program, where A.A. was the primary program offered, but a nonspiritual alternative program called Rational Recovery was also offered.

■ We must now consider the issue of damages. One of plaintiff's conditions of probation was that he could not reapply for his driver's license without the permission of his probation officer. Warner's primary claim for damages is that Terwilliger refused to permit him to get back his license during his probationary period, because he did not attend enough A.A. meetings. This damages claim is not convincing. Warner's two other contemporaneous alcohol-related driving offenses were a significant impediment to his getting back his license, quite apart from Terwilliger. Plaintiff did not show that the delay in getting back his license was due to Terwilliger's failure to grant him permission to reapply, rather than his own misdeeds. Moreover, plaintiff did not show with any specificity how he had been injured by not having his driver's license.

Warner's other damages claims are equally unconvincing. Warner complains about having his freedom of conscience violated—but from his own testimony that he refused to participate in what he considered the religious aspects of the meetings, he seems to have maintained his independence of mind

**2.** We admit some personal doubt that the current appellate interpretation of the Establishment Clause is consistent with the intentions of the Framers at the time the First Amendment was passed. The Framers were particularly concerned that there be no established religion such as had existed in England and other European countries, and which had caused numerous wars and uprisings. They were not, however, opposed to the public observation of religion in a nondenominational sense. This attitude persisted through the nineteenth century, and indeed even today some official, non-denominational religious practices persist, such as the presence of chaplains in the military service and in the Congress, and the words "In God We Trust" on our currency. However, in this century, consideration for the rights and attitudes of atheists and agnostics (as well as for non-Christian religions) has led to a much stricter view of what constitutes a violation of the Establishment Clause. We are of course compelled to follow the Supreme Court's teachings in this regard.

without any great difficulty. He complains about the waste of his time—but we had the impression that he would have also felt his time wasted by a non-religious support group (Terwilliger noted that Warner felt he was above the other group members intellectually). We find that plaintiff is entitled to only a one dollar nominal damages award due to defendant's violation of the Establishment Clause, along with reasonable attorney's fees.

The clerk shall enter judgment for plaintiff.

**SO ORDERED.**