Raymond AVELINE, Petitioner,

v.

**PENNSYLVANIA BOARD
OF PROBATION AND
PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 26, 1999.
Decided April 14, 1999.

James T. McHale, Scranton, for petitioner.

Arthur R. Thomas, Harrisburg, for respondent.

Before PELLEGRINI, J., LEADBETTER, J., and JIULIANTE, Senior Judge.

PELLEGRINI, Judge.

Before this Court are the preliminary objections filed by the Commonwealth of Pennsylvania, Board of Probation and Parole (Board) in response to a petition for review in the nature of peremptory mandamus filed by Raymond Aveline (Aveline) seeking to have the Board approve his residence in Pennsylvania while on probation for crimes he committed while living in Colorado.

Aveline was born in Pennsylvania in 1946 and resided in the state from May 1992 through June 1994.[1] Sometime during the month of June 1994, while in Colorado, Aveline was charged and convicted of a sex offense and sentenced to a term of ten years in prison.[2] After serving two years, Aveline was paroled in 1996[3] and remained in Colorado. Because he wanted to return to his home state, on January 21, 1998, Aveline petitioned a Colorado court to permit him to complete the duration of his probation in Pennsylvania pursuant to the Interstate Compact for the Supervision of Parolees and Probationers (Compact).[4] The Compact is an agreement among states that allows a parolee or probationer of one state to be supervised by another state for the duration of his or her parole or probation. Specifically, the Compact

provides that the contracting states agree to the following:

(1) That it shall be competent for the duly constituted judicial and administrative authorities of a state party to this compact (herein called 'sending state') to permit any person, convicted of an offense within such state and placed on probation or released on parole, to reside in any other state party to this compact (herein called 'receiving state') while on probation or parole, if –

(a) Such person is in fact a *resident* of or has his *family residing within* the receiving state and can obtain employment there. (Emphasis added).

\* \* \*

A resident of the receiving state, within the meaning of this section, is one who has been an actual inhabitant of such state continuously for more than one year prior to his coming to the sending state, and has not resided within the sending state more than six months immediately preceding the commission of the offense for which he has been convicted.

61 P.S. § 321. As such, under the terms of the Compact, a person may be permitted to reside in another state if that person was a "resident" of that state or "has family residing within" that state.

The Colorado probation authorities supported the transfer finding that Aveline had the requisite contacts with Pennsylvania because he was going to temporarily reside with his father, a life-long resident of Pennsylvania, and he had arranged for employment there. Consequently, on January 27, 1998, the Adams County District Court in Colorado approved the change of residence on the condition that Aveline

---

1. The petition for review does not set forth where Aveline was living from 1946 through 1992.

2. The complaint does not set forth with any specificity the offense involved.

3. Aveline was placed on probation from July 8, 1996 through July 8, 2004.

4. The Compact is located within what is commonly known as the "Parole Act", Act of June 25, 1937, P.L. 2086, *as amended*, 61 P.S. § 321.

would have no contact with children and would participate in offense specific treatment in Pennsylvania. On March 19, 1998, the Colorado probation authorities notified the Board's Interstate Compact Office of the residence change and the conditions of Aveline's probation as instituted by Colorado. The conditions of probation included offense specific treatment, payment of $4,200.00 for the costs of the supervision, registration as a sex offender and no contact with children, including his own.

Upon receiving Colorado's approval, Aveline returned to Pennsylvania on April 1, 1998. He resided in the City of Scranton and worked 40 hours per week in a discount store and 20 hours a week for a realty company doing maintenance. Although he registered as a sex offender with the Pennsylvania police, neither he nor the Pennsylvania probation authorities entered him into offense specific treatment. After Pennsylvania conducted its own investigation of the transfer, on August 28, 1998, the Board sent a letter to Aveline notifying him that it had denied consent for his change in residence because (1) he had not been in contact with Colorado since his departure; (2) he had changed residence without contacting Colorado authorities; and (3) he had failed to enter sex offender treatment. Pennsylvania notified Colorado of its denial and,

consequently, on September 16, 1998, the Colorado authorities notified Aveline that he was to return to Colorado by March 1, 1999.

■ Challenging the Board's action, on September 18, 1998, Aveline filed a petition for review in the nature of mandamus contending that because he had obtained employment in Pennsylvania and his father resided in the state, he had met the requirements for residence under the Compact. As such, he argued that the Board had no discretion to deny his application to reside in Pennsylvania. He also asserted that because the Compact did not limit, restrict or classify offenders for differing levels of consideration, his constitutional rights were violated because he was treated differently only because he was a sex offender.[5]

■ The Board then filed the preliminary objections [6] that are now before this Court challenging Aveline's ability to maintain his action. It contends that under the Compact, whether to accept parole supervision over a parolee from another state is within its absolute discretion and not subject to any judicial interference.[7] Even if it does not have absolute discretion to make such a decision, the Board then goes on to argue that the Court cannot compel it to accept Aveline under manda-

---

5. In his petition for review, Aveline also contended that the Board failed to give him a fair opportunity to be heard, present evidence, witnesses and/or testimony and to have a written decision. However, because Aveline failed to raise or develop this issue in his brief, it is waived for appellate review. *Jackson v. Indiana University of Pennsylvania*, 695 A.2d 980 (Pa.Cmwlth.1997), *petition for allowance of appeal denied*, 555 Pa. 692, 722 A.2d 1058 (1998) (even if suspended university student preserved in her petition for review the issue of use of unsworn testimony at hearing, issue was waived where it was not addressed in student's brief). *See also Commonwealth v. Rodgers*, 413 Pa.Super. 498, 605 A.2d 1228, 1229, *petition for allowance of appeal denied*, 532 Pa. 655, 615 A.2d 1311 (1992) ("We decline to become substitute counsel for appellant," and as such, "we will deem an issue abandoned where it has been

identified on appeal but not properly developed in appellant's brief").

6. When reviewing preliminary objections, all well-pleaded facts which are material and relevant must be considered as true. *Raleigh v. Pennsylvania Human Relations Commission*, 660 A.2d 177 (Pa.Cmwlth.1995). Preliminary objections shall be sustained only when they are clear and free from doubt. *Id.*

7. After the Board filed its preliminary objections, Aveline filed preliminary objections to the Board's preliminary objections in the nature of a motion to strike contending that the Board's preliminary objections should be stricken because the Board failed to file a timely answer. However, we overruled Aveline's preliminary objections on January 7, 1999, finding that the appropriate remedy for an untimely answer was a default judgment which Aveline had not sought.

mus because it only has a non-discretionary duty to accept him if he is a resident or resides, under its interpretation of the Compact, with his family in Pennsylvania. Because Aveline was neither a "resident" of Pennsylvania when the sex offense took place nor did he have his "family residing within" Pennsylvania because he was not intending to rejoin a family unit in Pennsylvania but only to live within the same state borders with his father, the Board contends he failed to establish any non-discretionary duty on the part of the Board necessary for mandamus to lie.[8] The Board further contends that because the law is clear that Aveline would not recover, its preliminary objections should be granted.

The core of the resolution of the Board's preliminary objections rests in knowing its obligation to accept or not accept the supervision of parolees under the Compact. To resolve this issue, first, we must determine the effect of a state entering into an interstate compact. In general, interstate compacts are multistate agreements made with congressional consent which arise when two or more states enact essentially identical statutes governing an area of mutual state concern that transcends state lines.[9] P. Hardy, INTERSTATE COMPACTS: THE TIES THAT BIND, 2 (1982). The terms of an interstate compact normally contain the obligations of the states, provisions for enactment and amendment, clauses vesting some authority with the promulgation of uniform application of the compact, and procedures for termination or withdrawal. Note, *Charting No Man's Land: Applying Jurisdictional and Choice of Law Doctrines to Interstate Compacts*, 11 Harv. L.Rev.1991 (1998). Because interstate compacts are agreements enacted into state law, they function simultaneously as contracts between states and as statutes within those states, and must be interpreted as both.[10] *Id.* Because they are considered statutes, if a non-discretionary duty is imposed on an official by the terms of the compact, mandamus would lie.

Specifically, as to the Interstate Compact for the Supervision of Parolees and Probationers, prior to its enactment, the movement of parolees or probationers to other states was done on an informal basis or by "gentlemen's agreements" between the states. The Council of State Governments, HANDBOOK ON INTERSTATE CRIME, 1 (ed. 78). However, problems arose because such agreements did not clearly establish the responsibilities of the receiving states in supervision of the parolee or probationer or the rights of a sending state to request the return of that individual. Because of these and other problems, in 1935, state officials drafted a proposed compact that sought to facilitate the interstate supervision of parolees and probationers because:

8. The Board did not, however, file a preliminary objection that Aveline had an adequate administrative remedy.

9. The authority for states to enter into such agreements with one another arises from the Compact Clause of the United States Constitution, Section 10, Clause 3, which states:

No State shall, without the Consent of Congress, lay any Duty of Tonnage, keep Troops, or Ships of War in time of Peace, enter into any Agreement or Compact with another State, or with a foreign Power, or engage in War, unless actually invaded, or in such imminent Danger as will not admit of delay.

U.S. CONST., Art. I, § 10, cl. 3.

10. Compacts have the characteristics of contracts because the enactment of the compact terms as part of an enabling statute by one state is viewed as an offer. The offer may be accepted through the enactment of statutes, including the same compact terms by another state. Note, *supra*, at 6. As with other contracts, the Contract Clause of the United States Constitution protects compacts from impairment by the states. Jill E. Hasday, *Interstate Compacts in a Democratic Society: The Problem of Permanence*, 49 Fla. L.Rev. 1 (1997). This means that upon enacting a compact, it takes precedence over the subsequent statutes of signatory states and, as such, a state may not unilaterally nullify, revoke or amend one of its compacts if the compact does not so provide. *Id.*

due to the existence of family in another state, better opportunities for employment there, or similar reasons, rehabilitation of a parolee or a probationer can be facilitated by transfer to that jurisdiction, but the rehabilitative value of such a move is often lost if the prisoner loses the supervision, advice, and assistance he would have received had he stayed in the state of his imprisonment, and the protection of the community to which he goes is threatened by the presence of a former criminal who has been left to work out his own destiny unassisted and uncontrolled.

*Id.* Because the Compact clarified these uncertainties, once Congress consented to the creation of the Compact, it was quickly ratified in all 50 states, including Pennsylvania, which ratified it in 1937.[11]

Because it was desirable that the Compact be administered and interpreted uniformly, Section 5 of the Compact provided for a mechanism to issue rules and regulations for uniform administration, stating:

> That the governor of each state may designate an officer who, acting jointly with like officers of other contracting states, if and when appointed, shall promulgate such rules and regulations as may be deemed necessary to more effectively carryout the terms of this compact.

61 P.S. § 321. Pursuant to this provision, the Parole and Probation Compact Administrator's Association (Association) was created. INTERSTATE COMPACT FOR THE SUPERVISION OF PAROLEES AND PROBATIONERS MANUAL, 1.7 (1999). The members of the organization consist of the designated officer of each state and meet yearly to vote on the rules and regulations needed for the Compact's uniform application.

As to the obligations of a state to receive a parolee or probationer for supervision, Section 3–106 the Parole and Probation Compact Administrators Regulations provides that:

> No state shall refuse to supervise a parolee or probationer eligible under the Compact who has the necessary employment and residency qualifications ...

Under this regulation then, a state does not have the authority to deny supervision to an out-of-state parolee once the requisite contacts are found, and the requirements under the Compact should not be subject to "rigid" interpretations. HANDBOOK ON INTERSTATE CRIME, p. 3.7.[12]

As to whether a parolee or probationer is ineligible for residence because he or she does not plan to reside in the same household as the family, Section 2–101 entitled "Eligibility for Supervision" provides that:

> The Association has refused to adopt proposals for rigid interpretations of the Compact's language regarding residence, family and employment. The view has always been that the language must be representative of the collaborative effort of its members which makes the Compact a success. The Association's view of desirable policy regarding acceptance of cases for supervision is that individuals should be accepted not only when they have legal residence or *relatives in the receiving state,* but also when it appears there is a plan for the individual which has merit and will serve to aid in the ultimate rehabilitation of the offender. (Emphasis added.)

11. As stated earlier, Congressional consent is required before states may enter into compacts. In 1934, Congress gave its consent to the Compact at issue here by enacting *Compacts between States for the Cooperation in Prevention of Crime,* 4 U.S.C. § 112, which allows for interstate agreements for the cooperative effort and mutual assistance in the prevention of crime and in the enforcement of their respective criminal laws and policies.

12. In *People v. Thompson,* 87 Misc.2d 302, 384 N.Y.S.2d 974 (1976), a New York court determined that the parole authorities could deny an application under the Compact even if the parolee or probationer was shown to have the requisite contacts by virtue of his having been a resident of New York prior to incarceration. It did not discuss, however, the Regulations promulgated by the Association.

*Id.* It is at least, then, the policy of the Association that a parolee or probationer must have "relatives in the receiving state" to be eligible for supervision and not only when he or she is planning to reside with them.

■ While we have been able to determine how the Association created, pursuant to Section 5 of the Compact would interpret the Compact, we are unable to determine whether Pennsylvania is a member of the Association and whether it is bound by their regulations, placing us in the unusual position of being unable to determine "the law" in Pennsylvania regarding the acceptance of out-of-state parolees. If Pennsylvania participates in the Association, as authorized by Section 5 of the Compact, 61 P.S. § 321, mandamus may lie because the Board may be bound by the Association's regulations and may have had an obligation to supervise Aveline once he established the requisite Pennsylvania contacts required by the Compact. Because we are unable to determine how Pennsylvania authorities have been applying the Compact, whether Pennsylvania has been applying the Association's regulations and even whether Pennsylvania belongs to the Association, correspondingly, we are unable to determine the type of discretion the Board has to accept or reject a parolee or probationer from another state once the requisite contacts are established.

As to the Board's other preliminary objection that Aveline has insufficient contacts with Pennsylvania required by the Compact, again, until the status and effect of the Association regulations in Pennsylvania is determined and further factual findings are made, we are also unable to determine whether Aveline has sufficient or insufficient contacts with Pennsylvania. As a result, we will deny the Board's preliminary objections and direct the Board to file an answer within 30 days.[13]

### ORDER

AND NOW, this 14th day of April, 1999, the preliminary objections filed by the Pennsylvania Board of Probation and Parole are denied. Petitioner is directed to file a verification to his Petition within 20 days. Respondent is directed to file an answer within 30 days from the date the verification is filed.

---

13. The Board filed two other preliminary objections. In one, it contends that because Aveline's petition fails to contain a notice to plead required by Pa. R.A.P. 1513(d) and verification required by Pa. R.A.P. 1513(e), the petition should be dismissed. Although we agree that the petition lacks these filing requirements, we note such defects are amendable and we will allow Aveline to provide a verification within 20 days. *Columbia Gas of Pennsylvania, Inc. v. Pennsylvania Public Utility Commission*, 104 Pa.Cmwlth. 142, 521 A.2d 105 (1987), *petition for allowance of appeal denied*, 517 Pa. 628, 538 A.2d 880 (1988). In the other, it requests that Aveline be required to plead specifically the date of the offense for which he was imprisoned and where he was residing when it occurred. However, from the complaint, it does not appear that Aveline is contending that he was a resident of Pennsylvania at the time of his conviction but only that he had family residing here. Accordingly, we will deny the Board's request for a more specific pleading.