758 A.2d 268 (2000)
Gilbert McGILL, Petitioner,
v.
PENNSYLVANIA DEPARTMENT OF HEALTH, OFFICE OF DRUG AND ALCOHOL PROGRAMS; Pennsylvania Department of Corrections; and Pennsylvania Board of Probation and Parole, Respondents.
Commonwealth Court of Pennsylvania.
Submitted on Briefs March 17, 2000.
Decided August 18, 2000.
*269 Gilbert McGill, petitioner, pro se.
Keith B. Pickel, Harrisburg, for respondent, Dept. of Health.
Victoria S. Freimuth, Camp Hill, for respondent, PA Dept. of Corrections.
Susan M. Zeamer, Harrisburg, for respondent, PA Board of Probation and Parole.
Before DOYLE, President Judge, and FRIEDMAN, J. and MIRARCHI, Jr., Senior Judge.
MIRARCHI, Jr., Senior Judge.
Before this Court are the preliminary objections of the Department of Health, Office of Drug and Alcohol Programs (Department of Health), the Department of Corrections and the Pennsylvania Board of Probation and Parole (Board), (collectively, Respondents), to the petition for review in the nature of an action in mandamus filed by Gilbert McGill (McGill). We sustain the preliminary objections and dismiss the petition for review for failure to state a valid cause of action.
McGill is an inmate at the State Correctional Institution at Houtzdale (SCI-Houtzdale) serving an aggregate imprisonment term of two-to-seven years for his 1996 and 1997 convictions of the retail theft and possession of instrument of crime charges. In an order dated May 24, 1999, the Board refused to grant McGill a parole and advised him that in determining whether to grant him a parole in the future, the Board would consider, inter alia, whether he has completed the prescriptive program offered by the Department of Corrections.
On October 20, 1999, McGill filed, pro se, a petition for review in the nature of an action in mandamus, invoking this Court's original jurisdiction. In the petition for review, McGill alleges that he has been designated by his counselor to attend the drug and alcohol treatment program, known as the Therapeutic Community Program (TC Program), operated by the Department of Corrections; the operation of the TC Programs is funded by the Department of Health which receives federal grants to be used for drug and alcohol treatment programs in Pennsylvania; the Department of Corrections operates the TC Programs without obtaining a license from the Department of Health in violation of 28 Pa.Code § 709.2[1] and without hiring clinical supervisors and counselors with the required qualifications listed in 28 Pa. Code §§ 704.6-704.7; and the ratio for the inmates participating in the TC Program *270 at the SCI-Houtzdale and the counselors is currently 40 to 1, exceeding the 8-to-1 ratio mandated by 28 Pa.Code § 704.12(3).
Based on these allegations, McGill asks this Court to issue a writ of mandamus, ordering the Department of Health to stop providing funding for the operation of the TC Programs, until the Department of Corrections complies with all the staffing and licensing requirements under the regulations; ordering the Department of Corrections to cease the operation of the TC Programs and remove the program from his designated prescriptive plan; and prohibiting the Board from denying him a parole based on his failure to participate and/or complete the TC Program.[2] In response, the Department of Health, the Department of Corrections and the Board have filed the preliminary objections in the nature of a demurrer, contending that McGill's petition for review should be dismissed with prejudice for his failure to state a valid cause of action, upon which requested relief can be granted.
In ruling on the preliminary objections in the nature of a demurrer, this Court must accept as true all well-pleaded facts and all inferences reasonably deducible therefrom; conclusions of law, unwarranted inferences, argumentative allegations or expressions of opinion need not be accepted, however. Dial v. Pennsylvania Board of Probation & Parole, 706 A.2d 901 (Pa.Cmwlth.1998); Wurth v. City of Philadelphia, 136 Pa.Cmwlth. 629, 584 A.2d 403 (1990). A demurrer must be sustained, where it is clear and free from doubt that the law will not permit recovery under the alleged facts. Stone & Edwards Insurance Agency, Inc. v. Department of Insurance, 151 Pa.Cmwlth. 266, 616 A.2d 1060 (1992).
A writ of mandamus sought by McGill is an extraordinary remedy which compels official performance of a ministerial act or a mandatory duty. Pennsylvania Dental Ass'n v. Insurance Department, 512 Pa. 217, 516 A.2d 647 (1986). Thus, in an action in mandamus involving an administrative agency's exercise of discretion, the court may only direct the agency to perform the discretionary act and may not direct the agency to exercise its judgment or discretion in a particular way or direct the retraction or reversal of action already taken. Matesic v. Maleski, 155 Pa. Cmwlth. 154, 624 A.2d 776 (1993). A writ of mandamus may be issued, only where there is a clear legal right in the plaintiff, a corresponding duty in the defendant, and lack of any other appropriate and adequate remedy. Delaware River Port Authority v. Thornburgh, 508 Pa. 11, 493 A.2d 1351 (1985). The purpose of mandamus is not to establish legal rights, but to enforce those rights already established beyond peradventure. Africa v. Horn, 701 A.2d 273 (Pa.Cmwlth.1997).
Sections 704.6, 704.7, 704.12(3) and 709.2 of the regulations relied on by McGill are contained in 28 Pa.Code Chapters 704 and 709, which were promulgated under the authority of Articles IX and X of the Public Welfare Code, Act of June 13, 1967, P.L. 31, as amended, 62 P.S. §§ 901-922, 1001-1031 and 1051-1087, setting forth powers and duties of the Department of Health.[3] Chapter 704 provides for staffing requirements for licensed or approved *271 "drug and alcohol treatment facilities." 28 Pa.Code § 704.1 Chapter 709 establishes the procedures and standards "for the licensure of freestanding drug and alcohol treatment facilities, under the powers and duties contained Articles IX and X of the Public Welfare Code ...." 28 Pa.Code § 709.1.
In defining the term "facility," Section 1001 of the Public Welfare Code, 62 P.S. § 1001, provides that the term "shall not include those operated by the State or Federal governments or those supervised by the department." Since the Public Welfare Code expressly excludes any drug and alcohol treatment facilities operated by the state and federal governments from the scope of the applicability of Article IX and X, the staffing and licensing requirements set forth in 28 Pa.Code Chapters 704 and 709 promulgated thereunder are inapplicable to the TC Programs operated at the state correctional institutions. We therefore reject McGill's assertions that the TC Programs operated by the Department of Corrections and funded by the Department of Health must comply with 28 Pa.Code §§ 704.6, 704.7, 704.12(3) and 709.2.
Further, a prisoner has no constitutionally protected liberty interests in being released from confinement prior to expiration of his or her maximum term of sentence. Wilder v. Department of Corrections, 673 A.2d 30 (Pa.Cmwlth.1996), appeal denied, 545 Pa. 673, 681 A.2d 1344 (1996). Parole is nothing more than a possibility, and if granted, it merely constitutes a favor given by the state, as a matter of grace and mercy, to a prisoner who has demonstrated a probability of his or her ability to function as a law-abiding citizen in society. Mickens-Thomas v. Pennsylvania Board of Probation & Parole, 699 A.2d 792 (Pa.Cmwlth.1997).
Under Section 17 of the Act of August 6, 1941, P.L. 861, commonly known as the Parole Act, as amended, 61 P.S. § 331.17, the Board has the exclusive power and the broad administrative discretion in determining if and when a prisoner should be released on parole. Tubbs v. Pennsylvania Board of Probation & Parole, 152 Pa.Cmwlth. 627, 620 A.2d 584 (1993), appeal denied, 536 Pa. 635, 637 A.2d 295 (1993). Consequently, this Court does not have jurisdiction to issue a writ of mandamus preventing the Board from denying a parole based on the prisoner's failure to complete the rehabilitation program designated by the prison officials. Weaver v. Pennsylvania Board of Probation & Parole, 688 A.2d 766 (Pa.Cmwlth. 1997).
Hence, accepting the facts alleged by McGill in his petition for review as true, he failed to state a valid cause of action in mandamus against Respondents. Accordingly, Respondents' preliminary objections in the nature of a demurrer are sustained, and McGill's petition for review is dismissed with prejudice.

ORDER
AND NOW, this 18th day of August, 2000, Respondents' preliminary objections in the nature of a demurrer to the petition for review are sustained. The petition for review filed by Gilbert McGill in the above-captioned matter is dismissed with prejudice.
FRIEDMAN, Judge, dissenting.
I respectfully dissent. In concluding that the petition for review (Petition) filed by Gilbert McGill fails to state a cause of action, the majority does not consider relevant federal law, the mandates of the Pennsylvania Drug and Alcohol Abuse Control Act[1] (Drug Abuse Act) or other applicable legal theories. I believe that, accepting the well-pleaded facts of the Petition as true, McGill states a cause of action in mandamus under the Drug Abuse Act, the Establishment Clause of the First *272 Amendment to the U.S. Constitution[2] and the separation of powers doctrine. Thus, I would overrule the preliminary objections in the nature of a demurrer.

I. Preliminary Objections
In addressing a preliminary objection in the nature of a demurrer, this court must determine whether, on the facts alleged, the law states with certainty that no recovery is possible. We must accept as true all well-pled allegations and material facts averred in the petition, as well as inferences reasonably deducible therefrom, and any doubt should be resolved in favor of overruling the demurrer. Hawks by Hawks v. Livermore, 157 Pa.Cmwlth. 243, 629 A.2d 270 (1993). If the facts as pled state a claim for which relief may be granted under any theory of law, then there is sufficient doubt to require the preliminary objection in the nature of a demurrer to be rejected. County of Allegheny v. Commonwealth, 507 Pa. 360, 490 A.2d 402 (1985).
McGill's Petition contains the following allegations. Each fiscal year, the federal government provides block grant money to the Commonwealth for the support of alcohol and drug treatment programs within the state. The Department of Health receives the block grant and allocates a portion of the money to fund the Department of Corrections' Therapeutic Community Program (TC Program) at the State Correctional Institution at Houtzdale (SCI-Houtzdale), which is a religion-based program.[3] The Department of Corrections does not possess a license to operate the TC Program. Moreover, the Department of Corrections does not have enough qualified persons to meet standards promulgated by the Department of Health, and, as a result, is unable to run the TC Program in an effective manner. The Department of Corrections and the Pennsylvania Board of Probation and Parole have determined that McGill needs alcohol and drug treatment and are requiring that McGill complete the TC Program before McGill can be recommended for and released on parole.
Based on these allegations, McGill seeks a writ of mandamus[4] against the Department of Health requiring compliance with the laws that govern inmate alcohol and drug treatment programs. McGill also seeks a writ of mandamus against the Board of Probation and Parole and the Department of Corrections requiring the operation of an effective program that meets appropriate standards and has no religious basis.

II. Federal Law
The federal government, pursuant to 42 U.S.C. § 300x-21, provides a block grant to the Commonwealth for the prevention and treatment of substance abuse. In order to receive the block grant, the Commonwealth must submit a state plan for *273 approval and enter into various funding agreements with the federal government. See 42 U.S.C. §§ 300x-21(b), 300x-32; 45 C.F.R. § 96.122. One of the funding agreements is that the Commonwealth will coordinate alcohol and drug treatment activities with the provision of correctional services. 42 U.S.C. § 300x-28(c); 45 C.F.R. § 96.132(c). In other words, the federal government expects the Commonwealth to expend block grant money for the treatment of prisoners in state correctional institutions. See 42 U.S.C. § 300x-31(a)(3); 45 C.F.R. § 96.135(b)(2).
For each fiscal year in which the federal government provides a block grant, the Commonwealth must arrange for an independent peer review to assess the "quality, appropriateness and efficacy" of the treatment services available in Pennsylvania.[5]See 42 U.S.C. § 300x-53(a)(1)(A); 45 C.F.R. § 96.123(a)(14). In assessing the "quality" of treatment services, the evaluators must examine whether the services meet "accepted standards ...." 45 C.F.R. § 96.136(b). These are higher standards than those established for the licensing of a facility; indeed, federal law explicitly states that the peer review may not be conducted as part of a state's licensing process. 45 C.F.R. § 96.136(e). It is a separate process that allows for the possibility that a properly licensed facility might not meet "accepted standards" for treatment. If a licensed program might not meet "accepted standards," then it is highly unlikely, if not impossible, that an unlicensed program would meet "accepted standards."
Although federal law clearly anticipates the use of block grant money to fund treatment programs that meet accepted standards, McGill does not state a cause of action in mandamus here because federal law gives McGill an adequate and appropriate remedy. Under 42 U.S.C. § 300x-55, McGill need only notify federal authorities that the Commonwealth is not in compliance with its funding agreements, and the federal government will investigate the matter. If the federal government determines that McGill's complaint is valid, the federal government may suspend, terminate or withhold block grant funding. 42 U.S.C. § 300x-55. Because McGill seeks the cessation of funding based on his allegations here, this constitutes an adequate and appropriate remedy for him. Thus, mandamus does not lie here under federal law.

III. State Law
Under state law, the Department of Health is responsible for promulgation of a state plan for the treatment of drug and alcohol abuse and dependency problems. Section 4(a) of the Drug Abuse Act, 71 P.S. § 1690.104(a). The Department of Health must promulgate the state plan in conformance with the procedure contained in the Commonwealth Documents Law.[6] 71 P.S. § 1690.104(b). The state plan must provide for rehabilitation programs for prisoners housed in state correctional institutions. 71 P.S. §§ 1690.104(a)(2), 1690.104(a)(14). The state plan also must include standards for the operation of those programs. 71 P.S. §§ 1690.104(a)(14), (18) & (19).
*274 Based on my review of the Department of Health's administrative regulations, the only standards promulgated by the Department of Health in conformance with the Commonwealth Documents Law for alcohol and drug rehabilitation programs at our state prisons are the licensing requirements found at Title 28 of the Pennsylvania Code, Part V. The Department of Health obviously believes that the licensing standards at Title 28 of the Pennsylvania Code, Part V apply to prisoner treatment programs.[7] According to the Department of Health's Substance Abuse Annual Report for the fiscal year 1995-96, the Department of Health has licensed therapeutic community treatment programs operated by the state correctional institutions at Cresson, Graterford, Muncy, Waymart and Rockview.[8] The majority may be correct that the Department of Health lacks statutory authority to license inmate treatment programs under Articles IX and X of the Public Welfare Code.[9] However, the Department of Health does have statutory authority under the Drug Abuse Act to promulgate standards for inmate programs, and it appears that the Department of Health has adopted the licensing standards for that purpose in lieu of promulgating separate standards.[10]
Based on the foregoing, I would conclude that, as a prisoner in a state correctional institution, McGill has a right to a substance abuse treatment program that meets the standards established under the Drug Abuse Act. At this stage of the proceedings, it appears that those standards are the same standards promulgated by the Department of Health for licensed facilities. Thus, the Department of Health has a duty to provide treatment programs at state prisons that meet the standards for licensing. Because McGill has alleged that the Department of Corrections' TC Program at SCI-Houtzdale does not meet licensing standards, McGill has stated a cause of action in mandamus under the Drug Abuse Act.

IV. Religion-Based Treatment
McGill alleges in his Petition that the Department of Corrections' TC Program uses religion/God as a basis for the program, in violation of his constitutional rights.[11] As indicated above, McGill also alleges that the Board of Probation and Parole is requiring that McGill complete the TC Program before he can be released on parole.
The United States Court of Appeals for the Seventh Circuit has held that a state *275 correctional institution may not require an inmate, upon pain of suffering adverse effects for parole eligibility, to attend a substance abuse counseling program with explicit religious content. Kerr v. Farrey, 95 F.3d 472 (7th Cir.1996). The court explained that such is a violation of the Establishment Clause of the First Amendment to the U.S. Constitution. Id. Likewise, the U.S. District Court for the Eastern District of Virginia has held that a state correctional institution violates the Establishment Clause when it conditions an earlier release from prison on participation in a therapeutic community treatment program that involves religion. Ross v. Keelings, 2 F.Supp.2d 810 (E.D.Va.1998).
In each case, the court explained that, under U.S. Supreme Court case law, government pressure to participate in a religious activity is an obvious indication that the government is endorsing or promoting religion over non-religion. Kerr; Ross. Thus, to determine whether a particular state has violated the Establishment Clause, courts must consider whether: (1) the state has acted; (2) the action amounts to coercion; and (3) the object of the coercion is religious. Id. Here, McGill alleges that the Board of Probation and Parole is requiring that he complete the religion-based TC Program before he can be released on parole. This is state action that amounts to coercion, and, although there is no record before us regarding the details of the TC Program, McGill has alleged that the program is based on religion. McGill seeks only to take part in a treatment program that is not based on religion; therefore, McGill has stated a cause of action in mandamus under the Establishment Clause.[12]

V. Re-sentencing
The majority properly states that, under Pennsylvania case law, a prisoner has no constitutionally protected liberty interest in parole. (See Majority op. at 271.) However, the Board of Probation and Parole has made completion of the Department of Corrections' TC Program a "requirement of parole." According to the well-pled facts of this case, McGill's sentencing court did not establish such a requirement for eligibility.
In Pennsylvania, "the sentencing judge establishes parole eligibility at the time of sentencing when the judge establishes a maximum and a minimum sentence pursuant to the Sentencing Code." Dial v. Vaughn, 733 A.2d 1, 8 (Pa.Cmwlth.1999) (Friedman, J. dissenting). Here, the Board has determined that McGill will not be eligible for parole until he completes the TC Program. However, if the program is religion-based and McGill is either not religious or participates in a religion that has tenets which differ from those prescribed by the TC Program, McGill will never complete the program.[13] Like the situation in Dial, the Board, in effect, has re-sentenced McGill to a term of confinement without parole, a usurpation of the judicial function and a violation of the separation of powers doctrine. See Dial (Friedman, J. dissenting). Because McGill has a right to no greater sentence than the one imposed by the sentencing court and because the Board of Probation and Parole has a duty to determine parole eligibility based on that sentence, I believe that McGill has stated a cause of action in mandamus under the separation of powers doctrine.
*276 For the reasons stated above, I would overrule the preliminary objections in the nature of a demurrer.
NOTES
[1] The regulations at 28 Pa.Code § 709.2 provides:

(a) Persons, partnerships and corporations, or other legal entities intending to provide drug and alcohol treatment services, shall first be licensed by the Department.
(b) No drug or alcohol freestanding treatment facilities may receive funds from the Department without a license issued under this chapter.
[2] In the petition for review, McGill also alleged that the TC Programs violate the constitutional requirement of the separation of church and state because it is permeated with reference to god and a higher power. That issue has been waived, however, for McGill's failure to raise or discuss it in his brief filed in support of his petition for review and in opposition to the preliminary objections. See Aveline v. Pennsylvania Board of Probation & Parole, 729 A.2d 1254 (Pa.Cmwlth.1999) (the petitioner waived the issue of the constitutionality of the Board's action due to his failure to raise or develop the issue in the brief filed in opposition to the preliminary objections to his petition for review).
[3] The departmental functions, powers and duties under Articles IX and X of the Public Welfare Code were transferred to the Department of Health by the Reorganization Plan No. 2 of 1977 and the Reorganization Plan No. 4 of 1981, 71 P.S. §§ 751-25 and 751-31.
[1] Act of April 14, 1972, P.L. 221, as amended, 71 P.S. §§ 1690.101 to 1690.115.
[2] The Establishment Clause provides that "Congress shall make no law respecting an establishment of religion ...." U.S. Const. amend. I. The clause applies to state governments through the Fourteenth Amendment. Ross v. Keelings, 2 F.Supp.2d 810 (E.D.Va. 1998).
[3] McGill alleges that the TC Program utilizes the Twelve Steps of the Alcoholics Anonymous Program. "The Twelve Steps [of Alcoholics Anonymous] stand for the proposition that recovery from alcoholism requires a spiritual awakening." Warner v. Orange County Department of Probation, 870 F.Supp. 69, 71 (S.D.N.Y.1994). Indeed, some of the Twelve Steps include: (1) turning "our will and our lives over to the care of God ...;" (2) admitting to God "our wrongs;" (3) being ready to have God remove our character defects; (4) asking God to remove "our shortcomings;" and (5) seeking "through prayer and meditation to improve our conscious contact with God ...." Id.
[4] Mandamus is an extraordinary writ of common law, designed to compel performance of a ministerial act or mandatory duty where there exists a clear legal right in the plaintiff, a corresponding duty in the defendant and want of any other adequate and appropriate remedy. Bronson v. Pennsylvania Board of Probation and Parole, 491 Pa. 549, 421 A.2d 1021 (1980), cert. denied, 450 U.S. 1050, 101 S.Ct. 1771, 68 L.Ed.2d 247 (1981).
[5] The peer review process must include treatment programs that are representative of "the total population of such entities." 42 U.S.C. § 300x-53(a)(1)(B); 45 C.F.R. § 96.136(a). Because "the total population of such entities" includes prison programs, the peer review process must include programs provided by state correctional institutions.
[6] Act of July 31, 1968, P.L. 769, as amended, 45 P.S. §§ 1102-1602. At this stage of the proceedings, I cannot determine whether the Department of Health has promulgated a state plan in accordance with the Commonwealth Documents Law. If such a plan exists, with standards for the operation of rehabilitation programs at state correctional institutions, it is not part of the record before us. Because the Department of Health might have a duty under the standards set forth in the state plan to provide prisoner treatment programs that have enough qualified staff to be effective, I believe that we must overrule the preliminary objections.
[7] The majority concludes that the licensing standards do not apply to prisoner treatment programs because the definition of "facility" in section 1001 of the Public Welfare Code, Act of June 13, 1967, P.L. 31, as amended, 62 P.S. § 1001, excludes facilities operated by the state. However, I note that the definition of "facility" at section 701.1 of Title 28 of the Pennsylvania Code does not exclude facilities operated by the state.
[8] See http://www.health.state.pa.us/php/sca/ accompli.htm. The Department of Health claims on its web site that it has licensure authority over both public and private drug and alcohol facilities. See http:// www.health.state.pa.us/php/sca/part1.htm.
[9] Act of June 13, 1967, P.L. 31, as amended, 62 P.S. §§ 901-922, 1001-1031 and 1051-1087. If the majority is correct that the Department of Health lacks authority to license treatment programs operated by the Department of Corrections, then the Department of Health has improperly licensed at least these five programs.
[10] Indeed, there would be no reason to promulgate separate standards for inmate treatment programs.
[11] The majority holds that this matter has been waived because McGill did not discuss it in his brief, citing Aveline v. Pennsylvania Board of Probation and Parole, 729 A.2d 1254 (Pa.Cmwlth.1999). (Majority op. at 272 n. 2.) However, Aveline relied on case law involving our rules of appellate procedure, and this is an original jurisdiction case. When this court considers a demurrer, we are required to examine the factual allegations and then decide whether recovery is possible under any theory of law. County of Allegheny. This means that we are not limited by the theories of law proposed in the petition or the petitioner's brief.
[12] In Weaver v. Pennsylvania Board of Probation and Parole, 688 A.2d 766, 774-75 (Pa. Cmwlth.1997), this court stated that, where a prisoner claims that the parole board violated his or her First Amendment rights by denying parole for failure to complete a "12-step rehabilitation program offered by the corrections facility that was permeated with references to God," the prisoner would be entitled to an order directing the prison officials to implement a new program or change the existing program.
[13] Moreover, if the program meets no standards for effectiveness, it is doubtful that McGill will overcome his substance abuse problems by completing the program.