## UPPER SOUTHAMPTON TOWNSHIP

v.

## UPPER SOUTHAMPTON TOWNSHIP ZONING HEARING BOARD

**Appeal of: Outdoor Partnership, LLC.**

**Upper Southampton Township**

v.

**Upper Southampton Township Zoning Hearing Board**

**Appeal of: Clear Channel Outdoor.**

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 2005.
Decided Oct. 18, 2005.

---

See also 830 A.2d 600.

Douglas C. Maloney, Langhorne, for appellants.

Robert J. Sugarman, Philadelphia, for appellees.

BEFORE: McGINLEY, Judge, and LEAVITT, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge LEAVITT.

Outdoor Partnership, LLC, and Clear Channel Outdoor appeal an order of the Court of Common Pleas of Bucks County (trial court) holding that land development

approval was required for the construction of billboards in Upper Southampton Township, thereby reversing the contrary conclusion of the Zoning Hearing Board (Board). In this case, we construe the meaning of "land development" as used in the Upper Southampton Township Subdivision and Land Development Ordinance (SALDO) and whether it was intended to encompass the construction of billboards.

Outdoor Partnership proposes to build four billboards on two lots in the Township; Clear Channel proposes to build six billboards on four lots. To that end, each has entered lease agreements with the landowners of properties that are presently developed for commercial uses.[1] The proposed signs are V-shaped, double-sided signs that measure 14 by 48 feet. The signs are to be free-standing; attached to a single metal pole anchored to the ground; and illuminated by indirect lighting. The billboards will advertise activities not conducted on the premises on which they are located.

This is the second round of appeals on these ten proposed billboards. Outdoor Partnership and Clear Channel's predecessor, Eller Media, successfully challenged the Township's total prohibition of billboards in its Zoning Ordinance, which this Court held to be *de jure* exclusionary. *Baker v. Upper Southampton Township Zoning Hearing Board*, 830 A.2d 600 (Pa. Cmwlth.2003). After this victory, Outdoor and Clear Channel applied to the Township for "off-premises" sign permits.[2] Two applications were submitted for each proposed billboard.[3] A zoning permit application was submitted to the township's Zoning Officer, and a building permit application was submitted to the township's Code Enforcement Officer.

The Township's Zoning Officer rejected the zoning permit applications for two reasons. First, Outdoor and Clear Channel applied for sign permits when they should have applied for business use zoning permits. Second, Outdoor and Clear Channel did not file land development applications with the planning commission in accordance with the SALDO.[4] The Zoning Officer reasoned that the lease agreements, which were attached to the applications,

1. The two lots leased to Outdoor Partnership are presently used by W.F.C. Company Inc. and Active Realty Profit Sharing. Zoning Appeal Application, Reproduced Record at 349 (R.R.——). The four lots leased to Clear Channel are presently occupied by James E. Hasson (warehousing); JDM Material Co. (construction); Midway Associates (Gold's Gym, a commercial fitness center); and Storage Equities (public storage). Zoning Appeal Application, R.R. 249. The properties are adjacent to the Pennsylvania Turnpike.

2. The Upper Southampton Township Zoning Ordinance defines an "off-premises sign" as "[a] sign which directs attention to an activity not conducted on the same premises." ZONING ORDINANCE § 712(1)(D)(2) (1992); R.R. 416a.

3. Outdoor and Clear Channel submitted Township forms entitled "Zoning Application for Sign Permit" and "Application for Plan Examination and Building Permit" for each of the ten signs. Zoning Appeals, Exhibits E and F; R.R. 290–305; 383–398.

4. The Zoning Ordinance requires an application to satisfy planning requirements. Section 902 states in relevant part, as follows:

   Application Requirements for Zoning Permits.
   1. All applications for Zoning Permits shall be made in writing by the owner, tenant, vendee under contract of sale, or authorized agent on a form supplied by the Township and shall be filed with the Zoning Officer. The application shall include four (4) copies of the following information:

   * * *

   K. All applicable data required by Part 7, Application and Plan Requirements of the Upper Southampton Subdivision and Land Development Regulations.
   ZONING ORDINANCE § 902; R.R. 424a–425a.

triggered the application of the SALDO. "Land development" is defined in the ordinance in relevant part as a "division or allocation of land or space, whether initially or accumulatively, between or among two or more existing or perspective [sic] occupants." UPPER SOUTHAMPTON TOWNSHIP SUBDIVISION AND LAND DEVELOPMENT ORDINANCE (SALDO) § 202.[5] Because the leases allocated land between two occupants for a new business use, i.e., the construction and placement of billboards, they proposed a "land development" as that term is used in the SALDO. The Code Enforcement Officer rejected the building permit applications for the same reason.[6]

Outdoor and Clear Channel appealed to the Board. It was their legal contention that the construction of a billboard is not a land development, and, further, a billboard is not a "business use." Their appeals were consolidated by the Zoning Board, which conducted a hearing.[7]

David Curry, owner of Outdoor, testified that he has handled 1,200 to 1,500 applications for billboard placement, and never has a municipality required subdivision or land development approval. In his experience, only zoning approval is required, and, thereafter, a building permit. David McCarron, Public Affairs Manager for Clear Channel, testified that he has handled 200 to 300 billboard placements, and not one of those had required a land development or subdivision approval.

The Zoning Officer, Joseph Golden, testified that adding a second use to the same property constituted a land development, and until the land development requirements were satisfied, a zoning permit application was premature. On cross-examination, he could not identify a specific "division or allocation of land or space" in the language of the applicable leases, and he conceded that the township did not require applicants for a sign permit to seek land development approval. Although he considered the construction of a substantial structure such as a billboard to be a land development, he conceded that the requirements for off-premises signs in the Zoning Ordinance applied to all types of signs, including billboards.

The Township's expert in land use planning, E. Van Rieker, also testified. Mr. Rieker explained that a billboard needs a land development review because of its size and location as well as its impact on such matters as fire and safety, utility, drainage and Turnpike rights-of-way. He could not explain why construction of every free-standing, on-premises sign, regardless of size, did not need land development approval.

The Board concluded that the Zoning Officer had erred. The Board held that a billboard should be regulated under the advertising and sign provisions of the Zoning Ordinance. However, because an off-premises billboard is a type of use not specifically permitted by the Zoning Ordi-

---

5. The same definition of "land development" appears in Section 107 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, as amended, 53 P.S. § 10107. The provisions and definitions of the Township Zoning and Planning Ordinances are consistent with those of the MPC. We refer to the Ordinances in this opinion because the decisions of the Township officers and of the Board refer to the Ordinances.

6. The Code Enforcement Officer explained both land development approval and a zoning permit were needed before he could issue a building permit.

7. To expedite the matter, the parties agreed to consolidation of the cases by the Board for the hearing, but they requested separate decisions for Outdoor and Clear Channel, to preserve the independent appeal rights of the parties. Notes of Testimony, Nov. 6, 2002, at 5–7 (N.T., 11/6/05 ——); R.R. 7–9.

nance, the Board held that a permit for construction of a billboard could be issued only upon order of the Zoning Hearing Board under Section 903 of the Zoning Ordinance.[8] Finally, because the leases did not specify an exact location for placement of the billboards or access to them, the Board held that the leases did not allocate land. Accordingly, the township's SALDO did not apply to the proposed billboards.

The Township appealed. The trial court did not take additional evidence but heard oral argument, and on January 10, 2005, the trial court reversed the Board.[9] It concluded that the Board erred in holding that a land development application was not required for construction of the billboards. It was irrelevant that the leases were not specific as to the location. Be-

cause the leases transferred an interest in land, which was already under commercial use, to effect a new use, *i.e.,* the construction of a billboard, they established "an allocation of land ... between ... two or more ... occupants." SALDO § 202. The trial court dismissed as "pure sophistry" the arguments of Outdoor and Clear Channel that because the terms of the leases were imprecise they did not allocate land. Trial Court Op., Jan. 10, 2005, at 10. Accordingly, the trial court reversed the Board. Outdoor and Clear Channel thereupon appealed [10] to this Court.

On appeal,[11] Outdoor and Clear Channel present the single issue of whether the construction of off-premises advertising signs is "land development" as defined in Section 107 of the Municipalities Planning Code (MPC) [12] and in the town-

---

**8.** It provides in pertinent part as follows:

> § *903. Zoning Permits Required.* Hereafter, no use listed in § 406, "Table of Use Regulations," may be established or changed; no structure shall be erected, constructed, reconstructed, altered or removed, and no building used or occupied or changed in use, until a Zoning Permit has been secured from the Zoning Officer. ZONING ORDINANCE § 903; R.R. 426a.

**9.** The trial court supplemented its opinion on March 14, 2005, to correct minor errors raised by the Appellant's statement of matters raised on appeal but otherwise adopted the Opinion of January 10, 2005.

**10.** The Board consolidated these cases for the taking of testimony but issued separate opinions and orders; the trial court assigned separate docket numbers to each case, consolidated the cases for its consideration, but issued a single opinion under both captions. Outdoor and Clear Channel filed separate appeals to this Court which were docketed to 324 C.D. 2005 and 325 C.D.2005, respectively. The matters were consolidated before this Court by order dated February 24, 2005.

**11.** In zoning appeals, as here, where the trial court takes no additional evidence, this

Court's scope of review is limited to determining whether the zoning hearing board committed an abuse of discretion or an error of law. *Baker v. Chartiers Township Zoning Hearing Board,* 677 A.2d 1274, 1276 (Pa. Cmwlth.1996). A conclusion that the zoning hearing board abused its discretion may be reached only if the zoning hearing board's findings are not supported by substantial evidence. *Id.* Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Bailey v. Upper Southampton Township,* 690 A.2d 1324, 1325 n. 1 (Pa.Cmwlth.1997).

**12.** Section 202 of the SALDO is closely modeled on the language of Section 107 of the MPC, 53 P.S. § 10107, which defines "land development" and "subdivision" as follows:

> "Land development" [is] any of the following activities:
> (1) The improvement of one lot or two or more contiguous lots, tracts or parcels of land for any purpose involving:
> (i) a group of two or more residential or nonresidential buildings, whether proposed initially or cumulatively, or a single nonresidential building on a lot or lots regardless of the number of occupants or tenure; or
> (ii) *the division or allocation of land or space,* whether initially or cumulatively, *between*

ship's SALDO. They contend that the trial court erred because the agreements, although termed "lease agreements," are actually nothing more than licenses. The agreements give Outdoor and Clear Channel permission to construct billboards on the land owner's property and to have continued access to them as needed to maintain the signs and change the advertising.[13] However, the billboards are the property of Outdoor and Clear Channel, and they may be moved to different locations on the leased property or removed entirely; as such, the billboards do not develop the land. In sum, Outdoor and Clear Channel argue that because the lease agreements do not specify the discrete point of land where the billboards will be placed, they do not allocate land use.

This Court has had occasion to consider the type of lease that will trigger a land development within the meaning of the MPC or a SALDO. These cases provide important precedent for the issue here, i.e., the circumstances under which the construction of a billboard will require land development approval. Critical to the resolution of this issue is the agreement by which the landowner authorizes the placement of the billboard.

In *Tu–Way Tower Co. v. Zoning Hearing Board of Township of Salisbury*, 688 A.2d 744 (Pa.Cmwlth.1997), this Court held that a special exception filing made by Tu–Way was not a land development. Tu–Way made this argument so as to avoid the application of the pending ordinance doctrine.[14] Tu–Way proposed to add 200 feet to its existing tower and to construct two additional towers and accessory buildings, which, in it words, would allow it to "subdivide" its new tower capacity by entering multiple "leases" with its new customers. We held that these "leases" were licenses because they did not divide the land, but rather, conveyed antenna space on Tu–Way's towers. Indeed, Tu–Way's interest in the land was unchanged. Thus, we held that Tu–Way's proposed project was neither a land development nor a subdivision, thereby requiring Tu–Way to comply with the new ordinance regulating cell phone towers.

Our holding in *Marshall Township Board of Supervisors v. Marshall Township Zoning Hearing Board*, 717 A.2d 1 (Pa.Cmwlth.1998), then followed. In *Marshall*, Unisite, a wireless company, leased a portion of a parking lot owned by the U.S. Post Office. Unisite then entered into a sub-lease agreement with American Porta-

---

*or among two or more existing or prospective occupants* by *means of,* or for the purpose of streets, common areas, *leaseholds,* condominiums, building groups or other features.
(2) *A subdivision of land.*
(3) Development in accordance with section 503(1.1).

\* \* \*

"Subdivision," the *division or redivision of a lot, tract or parcel of land* by any means into two or more lots, tracts, parcels or other divisions of land including changes in existing lot lines *for the purpose,* whether immediate or future, *of lease,* partition by the court for distribution to heirs or devisees, transfer of ownership or building or lot development. . . .

53 P.S. § 10107 (emphasis added).

**13.** Access must be accomplished without interfering with any other uses of the property by the owner or its tenants.

**14.** Under the pending ordinance doctrine, a building permit may be refused where a pending amendment to the zoning ordinance could prohibit the proposed use. *Marinari v. Zoning Hearing Board of New Hanover Township*, 90 Pa.Cmwlth. 601, 496 A.2d 121, 123 (1985). However, the pending ordinance doctrine does not apply where the subject matter of the application is a land development. *Tu–Way*, 688 A.2d at 747. Tu–Way sought to be exempt from a pending ordinance regulating cell phone towers.

ble Telecom (APT), pursuant to which APT proposed to replace an existing 100–foot lamp pole with a 150–foot combined antenna and light pole for the installation of APT's communications equipment. The township's supervisors argued that the lease agreements constituted a subdivision and land development, but we held otherwise. The agreement between Unisite and APT did not allocate or subdivide the land; allocation took place, if at all, when the U.S. Post Office leased its land to Unisite. Unisite authorized APT to construct a new and higher pole, but it did not in any way impact the land. Because APT leased capacity, not land, its agreement did not establish a land development or subdivision.[15]

In contrast to *Tu–Way*, we held in *White v. Township of Upper St. Clair*, 799 A.2d 188 (Pa.Cmwlth.2002), that a proposal to construct a cell phone tower was a land development proposal for purposes of the township's SALDO. In *White*, Crown Communications leased .428 acres of a 200–acre public park for the installation of a 350–foot communications tower and the construction of three equipment buildings, all encircled by an eight-foot high cyclone fence topped with barbed wire. This lease was held to establish a land development and subdivision because of the allocation of a 200–acre parcel between two uses by means of a lease. At issue was the SALDO of Upper St. Clair that defined land development as an "allocation of land or space."[16] In distinguishing our holding in *Tu–Way*, we explained.

Tu–Way did not divide the twelve acres of land that it owned but only reused it. It did not "subdivide" a vertical tower by a series of "leases" but simply licensed antenna space. Here, Residents do not assert that Crown's licenses to "tenants" are leases giving rise to subdivision. Rather, they contend that the Lease, which conveys the use of a discrete parcel of land from the Township to Crown for up to 100 years, creates a subdivision. They are correct.

*White*, 799 A.2d at 202.

The final case we review on the question of land development is *Lehigh Asphalt Paving and Construction Co. v. Board of Supervisors of East Penn Township*, 830 A.2d 1063 (Pa.Cmwlth.2003). Lehigh Asphalt held a mineral lease to quarry a 114.45–acre parcel; it also held an option agreement to purchase the entire parcel. Lehigh Asphalt sought to expand its 5–acre quarrying operation to the entire parcel while reserving a portion of the land for the existing residence of the record landowner. To that end, Lehigh Asphalt filed a land use plan with the township's planning commission, which refused to treat the application as a land development plan. Thereupon, Lehigh Asphalt instituted a mandamus action seeking to establish a deemed approval of its land development plan.

We held that Lehigh Asphalt's proposal constituted a land development because the operative lease allocated "land between the existing single-family residential use and the proposed expansion of the quarry

---

**15.** We also considered *Cassidy v. Lawrence U. Ginter, Inc.*, 6 Pa.Cmwlth. 430, 296 A.2d 293 (1972). In that case, a landowner sought a building permit to erect an apartment building. We found that the construction of 24 apartment units, each separately leased to tenants, did not require a subdivision of the land. It would involve a single landowner, and a single use, *i.e.*, a building for multiple occupants.

**16.** As in the ordinance here, the SALDO in *White* defined a land development as the "allocation of land or space, whether initially or cumulatively, ... by means of ... leaseholds...." *White*, 799 A.2d at 202, n. 30.

use." *Id.* at 1071. The mineral lease did not grant rights to a discrete parcel of the property, as had been the case in *White.* Nevertheless, the lease allocated land between a residential use and an expanded quarry operation, and, therefore, consistent with our holding in *White,* it was the means to effect a land development within the meaning of the MPC.

We return, then, to this appeal. Outdoor and Clear Channel insist that because their leases do not specify the exact location of their billboards and can be terminated by either party upon thirty-day notice, they are distinguishable from the leases considered in *White* and *Lehigh Asphalt.* They further argue that *Marshall Township* compels the conclusion that their so-called "leases" are actually licenses that relate to "capacity," not land. The Township argues to the contrary, observing that *White* and *Lehigh Asphalt* established the principle that a lease, even a mineral lease, that allocates land to a use separate from the existing use is a *land* development plan. *Marshall Township* is distinguishable because raising the height of an existing light pole did not establish a new use of the land. We agree with the Township.

▉▉▉ It is true, as noted by Outdoor and Clear Channel, that their billboards can be removed and will not place a large footprint on the land. They fail to acknowledge that above that single pole a substantial structure will be placed that will occupy a significant amount of space.[17] The amount of land and size of a structure are irrelevant to our land development jurisprudence, as it has been enunciated in *White* and *Lehigh Asphalt.* A lease that conveys an interest in and allocates land is

not a license within the meaning of *Tu–Way* and *Marshall Township.*

The ordinary definition of "allocate" means to "set apart and earmark or designate." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 57 (2002). A lease "grant[s] the possession and use of (land, buildings, rooms, movable property, etc.) to another in return for rent or other consideration." BLACK'S LAW DICTIONARY at 900 (7th ed.1999). Here, we consider agreements that have earmarked certain properties for a new "possession and use" by Outdoor and Clear Channel. Because the leases allocate land and space, as opposed to assigning a position on a pole or a tower, they propose a land development within the meaning of the Zoning Ordinance and the MPC. To hold otherwise would allow developers to escape land development regulation simply by entering into loose, open-ended lease agreements that become specific only after the zoning permit is granted. This is not the proper order of land use regulation in Pennsylvania as it has been established in the MPC.

Accordingly, we affirm the trial court.

## ORDER

AND NOW, this 18th day of October, 2005, the order of the Court of Common Pleas of Bucks County dated January 10, 2005, in the above captioned matter is hereby affirmed.

---

**17.** The application of a SALDO is not governed by whether a building will be constructed on stilts as opposed to a basement foundation. However, this would be the logical consequence of the argument advanced here by Outdoor and Clear Channel.