# WARMINSTER FIBERGLASS CO., INC.

v.

# UPPER SOUTHAMPTON TOWNSHIP, Joseph Golden and Alex N. Yovish.

### David Mermelstein

v.

### Upper Southampton Township, Joseph Golden and Alex N. Yovish.

### Appeal of: Warminster Fiberglass Co., Inc. and David Mermelstein.

Commonwealth Court of Pennsylvania.

Argued Oct. 30, 2007.
Decided Dec. 31, 2007.

Douglas Maloney, Langhorne, for appellants.

Harry G. Mahoney, Philadelphia, for appellees.

BEFORE: SMITH–RIBNER and LEAVITT, Judges, and KELLEY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

Warminster Fiberglass Co., Inc. (Warminster Fiberglass) and David Mermelstein (Mermelstein) (collectively, Applicants) appeal from the order of the Court of Common Pleas of Bucks County that sustained preliminary objections of Upper Southampton Township (Township), its manager and zoning officer, Joseph Golden, and its code enforcement officer and assistant zoning officer, Alex N. Yovish (collectively, Township) to Applicants' complaints in mandamus, which the trial court dismissed with prejudice. Applicants sought deemed approval of their building permit applications for off-premises advertising signs or billboards, and they requested damages.

Applicants argue that the trial court erred in dismissing their consolidated actions as they alleged their entitlement to deemed approval under Section 502(a)(3) of the Pennsylvania Construction Code Act (Act), Act of November 10, 1999, P.L. 491, *as amended,* 35 P.S. § 7210.502(a)(3), due to the Township's failure to act on the applications within fifteen days.[1] Applicants alternatively argue that the trial court improperly dismissed the complaints when the permits were denied solely on the basis that the construction of billboards required land development approval although such approval is not required under the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11202, and case law.[2]

1. The Legislature enacted the Act adopting the model code of the Building Officials and Code Administrators International, Inc. as "a Uniform Construction Code" to "insure that this Commonwealth has a uniform, modern construction code which will insure safety, health and sanitary construction." Section 102(a)(3) and (4) of the Act, 35 P.S. § 7210.102(a)(3) and (4).

2. The Township argues that Applicants failed to preserve the issue of the propriety of the trial court's decision to sustain demurrers due to their failure to raise it in the statement of matters complained of on appeal filed pursu

Mermelstein owns commercial property at 75–95 James Way within the Township's LI–Limited Industrial zoning district. On January 4, 2006, Mermelstein submitted applications for building and zoning permits, proposing to construct two off-premises advertising signs permitted in the OPAS (Off–Premises Advertising Sign) District under Section 185–16.1 of the Zoning Ordinance. Yovish denied the building permit applications on February 2, 2006, or twenty-nine days after the submission. The zoning permit applications were still under review. On April 4, 2006, Warminster Fiberglass, which owns industrial property at 725 County Line Road within the LI–Limited Industrial zoning district, submitted applications for building and zoning permits to construct two 50–foot–high, 14–foot–by–48–foot, off-premises advertising signs on its property, indicating that the property had already been granted zoning approval for construction of the proposed signs. Yovish denied the applications on May 1, 2006, or twenty-seven days after the submission, stating, *inter alia,* that a land development plan was required under the Township Subdivision and Land Development Ordinance (SALDO). The proposed billboards also exceeded the maximum size of 300 square feet and the allowable height and width of 10 feet and 30 feet respectively, and they would be located closer than the minimum 1000 feet from another advertising sign in violation of Section 185–16.1 of the Zoning Ordinance.

Applicants thereafter filed separate complaints in mandamus against the

Township, Golden and Yovish averring that Applicants were permitted to use the properties for the proposed billboards under *Baker v. Zoning Hearing Board of Upper Southampton Township,* 858 A.2d 699 (Pa.Cmwlth.2004), *appeal denied,* 582 Pa. 679, 868 A.2d 1202 (2005), which held that the Township Zoning Ordinance then in effect constituted a *de jure* exclusion of a legitimate use of off-premises advertising signs. They also averred that they were entitled to deemed approval of the building permit applications because the Township's denial of the applications twenty-seven days and twenty-nine days after their submissions failed to comply with the fifteen-day time limit set forth in Section 502(a)(1) and (3) of the Act, which provided at the time:

(1) Every application for a construction permit *for one-family and two-family dwelling units and utility and miscellaneous use structures* shall be granted or denied, in whole or in part, *within 15 business days* of the filing date. *All other construction permits* shall be granted or denied, in whole or in part, *within 30 business days* of the filing date....

....

(3) If the code administrator fails to act on an application for a construction permit for *one-family and two-family dwelling units and utility and miscellaneous use structures* within the time prescribed, the application shall be *deemed approved.* (Emphasis added.)

The Township filed preliminary objections in the nature of a demurrer

ant to Pa. R.A.P.1925(b). Rule 1925(b) is intended to aid trial judges in identifying and focusing on issues that the parties plan to raise on appeal. *Caln Nether Co., L.P. v. Board of Supervisors of Thornbury Township,* 840 A.2d 484 (Pa.Cmwlth.2004). In the Rule 1925(b) statement, Applicants did state that the trial court "erred in sustaining Preliminary Objections to Plaintiff's Complaint" before stating the two specific issues underlying the demurrers. Applicants provided in their Rule 1925(b) statement the issues that they raised on appeal in a concise manner, and as such the Court rejects the Township's argument.

pursuant to Pa. R.C.P. No. 1028(a)(4), alleging that the applications were denied timely, that Applicants failed to secure land development approval and further that Golden had no authority to issue building permits. Dismissal was sought under Pa. R.C.P. No. 1028(a)(7) as well for Applicants' failure to exercise or to exhaust a statutory remedy. In its March 2, 2007 order, the trial court sustained the demurrer and dismissed the complaints with prejudice, concluding that Applicants failed to establish a clear right to building permits.[3]

■ The trial court determined that the proposed billboards do not fall within one-family and two-family dwelling units and "utility and miscellaneous use structures," which should be structures accessory to one-family and two-family residential dwellings. It further determined that the different review periods for residential permits and other permits are appropriate due to different levels of application complexity; that the Township acted timely within the required thirty-day period; and that Applicants must first go through the land development process under the SALDO in accordance with *Upper Southampton Township v. Upper Southampton Township Zoning Hearing Board*, 885 A.2d 85 (Pa.Cmwlth.2005), which was subsequently reversed by the Supreme Court at ⸺ Pa. ⸺, 934 A.2d 1162 (2007). The

trial court deemed the remaining preliminary objections moot due to dismissal of the complaints.[4]

■ While characterizing the proposed billboards as "miscellaneous use structures" under Section 502(a)(1) of the Act, Applicants first argue that the Township was required to grant or deny the applications within fifteen business days of their filing. They maintain that "miscellaneous structures" are separate from "one-family and two-family dwellings" and are different from "accessory structures," that the proposed billboards do not fit within any of the nine use groups classified in the International Building Code (IBC) and that not all miscellaneous structures are accessory structures. See for example tanks and towers listed in the IBC as examples of "Utility and Miscellaneous Group U."

Section 103 of the Act, 35 P.S. § 7210.103, defines "[u]tility and miscellaneous use structures" as follows:

> Buildings or structures of an accessory character and miscellaneous structures not classified by the Building Officials and Code Administrators International, Inc. [BOCA], in any specific use group. The term includes carports, detached private garages, greenhouses and sheds having a building area less than 1,000 square feet. The term does not include swimming pools or spas.

---

3. A writ of mandamus is an extraordinary remedy, which compels official performance of a ministerial act. *Rosario v. Beard*, 920 A.2d 931 (Pa.Cmwlth.2007). A writ of mandamus may be issued only where there is a clear legal right in the plaintiff, a corresponding duty in the defendant and lack of any other appropriate and adequate remedy. *McGill v. Pennsylvania Department of Health, Office of Drug and Alcohol Programs*, 758 A.2d 268 (Pa.Cmwlth.2000).

4. The Court's review of the trial court's order is limited to determining whether the court

committed a legal error or abused its discretion. *Boyd v. Rockwood Area School District*, 907 A.2d 1157 (Pa.Cmwlth.2006), *appeal denied*, 591 Pa. 717, 919 A.2d 959 (2007). In ruling on preliminary objections in the nature of a demurrer, the Court must accept as true all well-pleaded facts and all inferences reasonably deducible therefrom, but it need not accept conclusions of law. *McGill*. A demurrer must be sustained only where it is clear and free from doubt that the law will not permit recovery under the alleged facts. *Id.*

Section 302.1 of the Fourteenth Edition of the BOCA National Building Code/1999 (BOCA Code) provides that "[a]ll structures shall be classified with respect to occupancy in one or more of the use groups" and that "[w]here a structure is proposed for a purpose which is not specifically provided for in this code, such structure shall be classified in the use group which the occupancy most nearly resembles." Section 302.1 then lists ten use groups, including a "Utility and Miscellaneous" use group (Use Group U), which "shall include structures that are accessory to a residential occupancy including, but not limited to, those listed in Table 312.1." Section 312.1. Table 312.1 enumerates the following examples: "Agricultural buildings, barns, carports, grain silos, stables, livestock shelters, detached private garages, greenhouses and sheds having a building area less than 2,500 square feet."

 Under the "statutory construction doctrine *ejusdem generis* ('of the same kind or class'), where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated." *McClellan v. Health Maint. Org. of PA,* 546 Pa. 463, 473, 686 A.2d 801, 806 (1996). The doctrine applies equally where specific words follow general words. *Id.* Thus, where, as in Section 312.1 of the BOCA Code, general expressions such as "including, but not limited to" precede a specific list of included items, the general expressions should "apply only to persons or things of the same general kind or class as those specifically mentioned in the list of examples." *Id.* at 472, 686 A.2d at 805. It is also axiomatic that "statutes or parts of statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things...." *Fairview Township v. Fairview Township Police Ass'n,* 795 A.2d 463, 470 (Pa. Cmwlth.2002), *aff'd,* 576 Pa. 226, 839 A.2d 183 (2003). Finally, in construing a statute the Court must give effect to every statutory provision. *Daugherty v. County of Allegheny,* 920 A.2d 936 (Pa.Cmwlth. 2007).

After construing Section 502(a) of the Act and the definition in Section 103 in conjunction with Section 312.1 of the BOCA Code, the Court concludes that the term "utility and miscellaneous use structures" is intended to include only those structures that are accessory to residential occupancy similar to the examples enumerated in Section 103 of the Act and Section 312.1 of the BOCA Code. Consequently, "[a]ll other construction permits" under Section 502(a)(1) should be construed as permits for structures other than one-family and two-family dwellings and structures accessory to residential occupancy, such as commercial off-premises advertising signs. All such permits shall be granted or denied, in whole or in part, within thirty business days of filing, and because the Township denied the applications twenty-seven days and twenty-nine days after the filing dates, Applicants failed to establish a clear right to deemed approval.

 Applicants argue in the alternative that land development approval is not required because they will own the billboards to be constructed on the properties. They assert that the trial court ignored the distinction between billboards owned by property owners and those leased to separate occupants and that their proposal does not fit within the following definition of "land development" in Section 107 of the MPC, 53 P.S. § 10107:

(1) *The improvement* of one lot or two or more contiguous lots, tracts or parcels of land for any purpose involving:

....

(ii) *the division or allocation of land or space,* whether initially or cumulatively, *between or among two or more existing or prospective occupants* by means of, or for the purpose of streets, common areas, leaseholds, condominiums, building groups or other features. (Emphasis added.)

A virtually identical definition is set forth in Section 202 of the SALDO.

The Court held in *Tu–Way Tower Co. v. Zoning Hearing Board of Salisbury Township,* 688 A.2d 744 (Pa.Cmwlth.1997), that the addition of 200 feet to the existing antenna tower and the construction of additional towers on the leased property was not land development because the leases granted only licenses and did not divide the land or change the interest in the land. In *Marshall Township Board of Supervisors v. Marshall Township Zoning Hearing Board,* 717 A.2d 1 (Pa.Cmwlth.1998), the lease of the property to replace a 100–foot lamp pole existing on the property with a 150–foot antenna and a light pole did not constitute land development. In *White v. Township of Upper St. Clair,* 799 A.2d 188 (Pa.Cmwlth.2002), however, the lease of a portion of a public park to construct a 350–foot communication tower and related buildings was held to have triggered a land development because the lease allocated the parcel between the two uses. Similarly, in *Lehigh Asphalt Paving & Constr. Co. v. Board of Supervisors of East Penn Township,* 830 A.2d 1063 (Pa. Cmwlth.2003), the proposal to expand a quarry operation conducted on a parcel under a mineral lease reserving a portion of the parcel for the existing residence was held to be a land development because the lease allocated the land between a residential use and an expanded quarry operation.

While this appeal was pending, the Supreme Court reversed this Court's order in *Upper Southampton Township,* which held that the construction of ten off-premises advertising signs on the two leased lots required land development approval because the leases allocated land and space. Observing that the definitions of land development and "[d]evelopment plan" [5] and the effect of the subdivision and land development ordinances [6] speak to developments "on a large scale," the Supreme Court concluded that "[t]he MPC, when viewed as a whole, clearly is intended to apply to the allocation of land in such a way that issues related to public use, water management, sewers, streets and the like must be addressed." *Upper Southampton Township v. Upper Southampton Township Zoning Hearing Board,* —— Pa. at ——, 934 A.2d at 1168. The Supreme Court determined that *Upper Southampton Township* is more analogous to *Tu–Way* and *Marshall Township* than to *White* and *Lehigh Asphalt* and that "[n]one of the concerns addressed by land development plans is applicable to this mi-

---

**5.** Section 107 of the MPC defines "[d]evelopment plan" as "the provisions for development, including a planned residential development, a plat of subdivision, all covenants relating to use, location and bulk of buildings and other structures, intensity of use or density of development, streets, ways and parking facilities, common open space and public facilities."

**6.** Section 507 of the MPC, 53 P.S. § 10507, provides:

Where a subdivision and land development ordinance has been enacted by a municipality under the authority of this article no subdivision or land development of any lot, tract or parcel of land shall be made, no street, sanitary sewer, storm sewer, water main or other improvements in connection therewith shall be laid out, constructed, opened or dedicated for public use or travel, or for the common use of occupants of buildings abutting thereon, *except in accordance* with the provisions of such ordinance.

nor use of the properties in question." *Id.*, —— Pa. at ——, 934 A.2d at 1169. The Supreme Court concluded in *Upper Southampton Township*:

> [I]t would be an absurd or unreasonable reading of the statute to conclude that a use that does not involve such development of the land becomes one merely because the property owners granted appellant the right to erect the billboards through leaseholds, rather than erecting the billboards on their own.... The manner of the creation of appellant's interest in the subject properties, limited as that interest is, does not alter or enhance the proposed use.

*Id.*, —— Pa. at ——, 934 A.2d at 1169–1170.

The construction of four billboards on the two lots proposed here is much smaller in scale than the construction of ten billboards on the two lots proposed in *Upper Southampton Township*. Applicants' proposal did not involve sewage disposal, water supply or a new street layout. *See* Reproduced Record at 22 and 82. As a result, Applicants' proposed construction of billboards cannot be considered as land development, regardless of whether Applicants will own the billboards or lease them to someone else. In conclusion, the Court affirms the trial court's order sustaining the demurrer on the issue of deemed approval, but it reverses the order to the extent that it dismissed the complaints based on the erroneous determination that land development approval was required before Applicants could obtain the building permits. The Court remands this case to the trial court to consider and dispose of the remaining preliminary objections and to proceed with such further action as the trial court deems necessary.

### *ORDER*

AND NOW, this 31st day of December, 2007, the Court affirms in part and reverses in part the order of the Court of Common Pleas of Bucks County and remands this case to the Court of Common Pleas for the reasons discussed in the foregoing opinion.

Jurisdiction is relinquished.