**DELAWARE AVENUE, LLC, Petitioner**

v.

**DEPARTMENT OF CONSERVATION AND NATURAL RESOURCES and Department of Environmental Protection, Respondents.**

Commonwealth Court of Pennsylvania.

Argued May 18, 2010.
Decided June 10, 2010.
As Amended June 11, 2010.

Richard D. Malmed, Philadelphia, for petitioner.

Martha R. Smith, Asst. Counsel, Harrisburg, for respondent, Department of Conservation and Natural Resources.

Margaret O. Murphy, Asst. Counsel, Harrisburg, for respondent, Department of Environmental Protection.

BEFORE: PELLEGRINI, Judge, and LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge PELLEGRINI.

■ Delaware Avenue, LLC (Petitioner) petitions for review of an order of the Board of Property (Board)[1] sustaining the preliminary objections of the Department of Conservation and Natural Resources (DCNR) and the Department of Environmental Protection (DEP) and dismissing its complaint for improper service of process and failure to state a claim. Finding no error in the Board's decision, we affirm.

This case concerns 10 acres of riparian land in the City of Philadelphia bounded by the Betsy Ross Bridge to the south and the Delaware River to the east. In 1960, the Commonwealth, City of Philadelphia, Delaware River Port Authority, federal government and Army Corp of Engineers all participated in a project which dredged the nearby Frankford Creek and dumped the fill along the banks of the Delaware River, directly south and east of the subject property, in order to provide subjacent support for several piers of the Betsy Ross Bridge. The dumping of this fill resulted in the exposure of approximately four acres of previously submerged land between the property and the Delaware River.

Petitioner recently acquired title to the 10–acre property by special warranty deed and the four acres of newly exposed land by quit claim deed. In an attempt to quiet title to the four acres of previously submerged land, Petitioner filed an action in federal court against the City of Philadelphia, the Delaware River Port Authority, the federal government and the Commonwealth. The first three parties did not contest title and agreed that title could be quieted as to them. The Commonwealth was dismissed from the case on its motion on the basis of sovereign immunity.

Petitioner then attempted to quiet title as to the Commonwealth by filing a complaint with the Board contending that it had title to the filled land. The Commonwealth filed preliminary objections, which among other things,[2] claimed that it owned the land on which the fill was placed. In addressing this question, the Board first noted that ownership of land underneath the water of a navigable river lies in the Commonwealth, held in trust for the people. *Black v. American International Corp.*, 264 Pa. 260, 107 A. 737 (1919). While the natural accretion of soil inures to the riparian landowner, the addition of land resulting from man-made improvements to a navigable river inures to the Commonwealth. *Id.* Petitioner admitted that the addition of the four acres of land

---

1. Section 1207 of the Administrative Code, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 337, provides that the Board of Property shall have jurisdiction "to hear and determine cases involving the title to land or interest therein brought by persons who claim an interest in the title to lands occupied or claimed by the Commonwealth." This vests in the Board of Property exclusive jurisdiction to determine the title to real estate or to remove a cloud on title to such real estate where private property owners and the Commonwealth claim an interest in the same real estate. *Krulac v. Pennsylvania Game Commission*, 702 A.2d 621 (Pa.Cmwlth.1997); *McCullough v. Department of Transportation*, 116 Pa.Cmwlth. 215, 541 A.2d 430 (1988).

2. DEP and DCNR filed joint preliminary objections to the complaint alleging improper service because neither agency was named as a party in the case and Petitioner mailed the complaint to counsel for the departments, neither of which was authorized to accept service on behalf of the Commonwealth or its agencies. The Board determined that Pa. R.C.P. No. 422(a) required Petitioner to serve the complaint on the Commonwealth and its agencies "by handing a copy to the person in charge thereof." The Board rejected Petitioner's argument that the General Rules of Appellate Practice and Procedure governed this case and only required service by mail rather than hand delivery. At oral argument, for this appeal only, the Departments abandoned any argument that service was improper.

between its property and the Delaware River occurred due to the dumping of fill along the riverbank, a man-made event. Therefore, the land belonged to the Commonwealth, and the Board sustained the preliminary objection and dismissed the complaint. This appeal followed.[3]

■■ On appeal, Petitioner argues that the Board erred in granting the Departments' preliminary objection in the nature of a demurrer and dismissing the complaint because the Commonwealth does not have any title interest in the land at issue. Petitioner admits that submerged lands of navigable rivers are owned by the Commonwealth and held in trust for the benefit of the public. *Poor v. McClure*, 77 Pa. 214, 219 (1873).[4] Petitioner also admits that the four acres of land at issue were exposed due to the dumping of fill along the Delaware River, a man-made event rather than the natural flow of alluvion which is commonly referred to in property law as "accretion," which would entitle it to the newly created land. However, Petitioner contends that "the overwhelming state of scholarly opinion" asserts that any distinction between lands created by natural versus artificial means is now obsolete.

■ There is one exception that the Commonwealth owns the land under navigable streams forever and that is the doctrine of accretion, which is the *natural and imperceptible* deposit of alluvion brought down by the river over time. *Black*, 264 Pa. at 263, 107 A. at 737. Changes in the low water line resulting from natural accretion or erosion can add or diminish a

3. Our review of a decision of the Board is limited to determining whether errors of law were made, constitutional rights were violated and whether the necessary findings of fact are supported by substantial evidence. 2 Pa. C.S. § 704. In ruling on preliminary objections in the nature of a demurrer, the Court must accept as true all well-pleaded facts and all reasonable inferences deducible therefrom; however, we need not accept conclusions of law. *Warminster Fiberglass Co., Inc. v. Upper Southampton Township*, 939 A.2d 441 (Pa.Cmwlth.2007). A demurrer will be sustained only where it is clear and free from doubt that the law will not permit recovery under the alleged facts. *Id.*

4. *See also Freeland v. Pennsylvania Railroad Co.*, 197 Pa. 529, 47 A. 745 (1901); *Palmer v. Farrell*, 129 Pa. 162, 18 A. 761 (1889); *Pursell v. Stover*, 110 Pa. 43, 20 A. 403 (1885); *Flanagan v. City of Philadelphia*, 42 Pa. 219 (1862); *Carson v. Blazer*, 2 Binn. 475 (1810).

Under Pennsylvania law, owners of land along the banks of such waters in Pennsylvania do not have exclusive rights in those waters; that right is vested in the Commonwealth for the benefit of the public. *Shrunk v. Schuylkill Navigation Co.*, 14 Rawle 71 (Pa. 1826); *Carson v. Blazer; Lehigh Falls Fishing Club v. Andrejewski*, 735 A.2d 718 (Pa.Super.1999). Once a river or stream is declared navigable, for purposes of title to submerged lands, it remains legally navigable water. *Lehigh Falls Fishing Club*, 735 A.2d at 719 n. 2. Once a body of water meets the navigability test, title to the bed is in the Commonwealth, and the boundaries are fixed (subject to the fluctuations associated with natural—not man-made—erosion and reliction). *Black*, 264 Pa. at 262–63, 107 A. at 738. The Commonwealth is not divested of title by disuse for commerce. *See U.S. v. Appalachian Electric Power Co.*, 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243 (1940); *Poor v. McClure.*

Riparian landowners may obtain rights from the Commonwealth to fill or construct structures such as piers, wharves, bridges and the like on Commonwealth submerged lands and may hold property interests in the structures themselves. *See* Section 3 of The First Class City Code, Act of April 8, 1868, P.L. 755, 53 P.S. § 16833. However, title to the underlying submerged land remains in the Commonwealth and may not be alienated in fee by the Commonwealth government. *Illinois Central Railroad Co. v. Illinois*, 146 U.S. 387, 13 S.Ct. 110, 36 L.Ed. 1018 (1892); *The New York and Erie Railroad Co. v. Young*, 33 Pa. 175, 9 Casey 175 (1859) (private mill dam authorization revocable); *City of Philadelphia v. Commonwealth*, 284 Pa. 225, 130 A. 491 (1925) (occupation of submerged lands by municipal piers under City licenses is subject to revocation by the Commonwealth).

riparian landowner's interest and the Commonwealth's title. *Id.* at 262–63, 107 A. at 738. Artificial placement of fill is not considered accretion under Pennsylvania law, and is subject to different rules. The Supreme Court of Pennsylvania rejected an argument similar to Petitioner's in *Black,* and pronounced the black letter rule of law on this subject as follows:

> While it is true [the riparian landowner] is entitled to and becomes the owner of the natural accretions to his land resulting from the imperceptible deposits of alluvion along his riparian front, it is equally true, as found by the court below, this principle 'does not apply where land has been made by human agency by depositing material on a river bottom.' *Poor v. McClure; Allegheny City v. Moorehead,* 80 Pa. 118. Such accretions are not 'gradual and imperceptible,' and are not 'brought down by rivers' or other streams.

Petitioner does not contest the fact that the newly exposed land was created by artificial means—the dumping of fill on the Commonwealth-owned riverbed. Acknowledging that this was not the gradual and imperceptible deposit of alluvion over time and the doctrine of accretion does not apply in this case, Petitioner claims that such a distinction between natural and artificial means is obsolete and that the case law in this area is outdated and ill-suited for modern times.

In support of this position, Petitioner cites to several treatises, none of which specifically address Pennsylvania case law. It specifically points to Section 3:43 of the *Law of Water Rights and Resources,*[5] which notes that several states have taken the stance that changes in the course of a waterway caused by artificial and natural means should be treated the same way and that the riparian landowner should gain title to the newly exposed land so long as

he or she did not cause the change. Petitioner argues that several principles listed in those treatises favor the riparian owner's right to the newly created land and justify a change in Pennsylvania law, namely (1) the one who bears the burden of the loss of the riparian land by contiguity to the water should benefit from an unforeseen gain; (2) all land should have an owner, and where it was created by redirection of the river, the adjacent property owner is the best one to cultivate and develop it; and (3) the contiguous property owner should not be deprived of access to new land because his land would lose its riparian nature. Because neither it nor its predecessor in interest caused the change in the Delaware River, Petitioner argues that the previously submerged land should inure to it and not the Commonwealth under this more modern view of the law of accretion.

Even if we were to agree with those treatises, they do not allow for a property owner to gain ownership of land created by artificial means, i.e., fill—but allow for a property owner to claim new land, not just by gradual and imperceptible deposit, but when it is created by a waterway naturally changing course. Moreover, under Petitioner's approach, a riparian landowner could gain title to Commonwealth-owned land, even when the land was created by the purposeful dumping of fill or even damming. Such a stance could lead to less than honest behavior by landowners in an attempt to gain title to valuable riparian land and could have deleterious effects upon our state's navigable waterways as well as the environment.

■ Petitioner makes much of the fact that the Commonwealth itself was responsible for the placement of the artificial fill and, as such, it could no longer claim title

---

5. Dan Tarlock, *Law of Water Rights and Re-* *sources* § 3:43 (Thomson Reuters 2009).

to the previously submerged land. However, Pennsylvania courts have continuously held that changes in the low water line associated with artificial filling do not modify the boundaries of navigable waterways, regardless of whether the Commonwealth or a private entity was responsible for the fill. *See Black,* 264 Pa. at 262–63, 107 A. at 738; *Poor v. McClure; Allegheny City v. Moorehead,* 80 Pa. 118 (1875). In the present case, the Commonwealth chose to dredge a nearby creek and place the artificial fill along the bed of the Delaware River in order to provide additional subjacent support for the Betsy Ross Bridge. This was well within the Commonwealth's authority, and it did not lose title to the previously submerged land simply because it changed the low water line through the placement of artificial fill.

Given the well-settled law which governs this case, the Commonwealth retains title to the previously submerged land, and the Board was correct in sustaining the preliminary objection and dismissing the complaint for failure to state a claim. However, we note that we are neither addressing the claims, if any, the Petitioner may have for loss of access to the Delaware River nor are we addressing the exact nature of the Commonwealth's interest in the land.

Accordingly, the order of the Board is affirmed.

### ORDER

AND NOW, this *10th* day of *June,* 2010, the November 6, 2009 order of the Board of Property at No. BP–2007–003, is affirmed.